Thank you, Your Honor. May it please the Court, my name is Daniel Johnson and I'm here for the Plaintiff Appellants and I'd like to try to reserve five minutes for rebuttal. Looks like that's up to me, right? Yep. This case challenges several municipalities' implementation of so-called red light cameras to detect and ticket certain traffic infections. And the plaintiffs make four challenges to the defendant's program. First, that the defendants ignored the statutory restriction on the amount that could be fined for these citations. Second, that the defendants entered into contracts that violated the proscription in the statute against revenue sharing with private vendors. Third, that the defendants used unapproved legal notices to issue these citations. And last, that at least one city is using these cameras at a location that the statute does not authorize. Right. Five corners. Five corners. Okay, so you've got a lot of issues there and you've got limited time, so pick your arguments that you think we most need to know about because this is advice to all counsel. We have all read the briefs very carefully and we don't pre-conference, but we certainly have delved into the case. Thank you. In our respective chambers. So, if you don't touch something in your argument, it doesn't mean you've waived it. Perfect. That's reassuring. Thank you. And I think you want to probably focus on the, certainly I'm sure you want to focus on the fee amount. That's exactly right and I'll start there. And it's obviously a question of statutory interpretation and as this court has said, that's ultimately an exercise in common sense, not dogma. We look at the whole thing and we look at the words and try to determine what the legislature intended. Here, the text itself of the provision, the pertinent provision reads, however, the amount of the fine shall not exceed the amount of a fine issued for other parking infractions within the jurisdiction. Now, this plainly expresses a limit. It doesn't say exactly what that limit is, but we know it's a limit. But we know there are at least two infractions that are punishable, punishment is finable, by up to $250 within these jurisdictions. The source, however, is state law, right? Exactly. So, you know, that's one of the reasons why the district court's interpretation of the statute and what the defendants urge here doesn't make any sense. If the legislature had intended the limit to be some amount that is found in a state statute, setting a fine that every municipality in the state issues, levies for that, they could have just said so. But the language of the statute is pretty clear, is it not? That if a parking infraction is finable by $250, it doesn't say anything about under whose law, it just has to apply in the jurisdiction. And if you abandon a car on the streets of Seattle, you can get a $250 fine for parking your junk vehicle on the street. Right. Well, again, though, you know, the object here is to determine what the legislature intended. And I would submit that the language in this fine, this was an amendment added to the bill that limits fines. Limits to parking infractions. Right. But the entire clause itself makes no sense if it's intended to limit that fine to an amount such as $250. But those are both parking infractions. I mean, they're no different than running over the meter on these confounded electronic parking meters. Right. But, again, if the question is why did the legislature do this, what is the point of this sentence? But why don't we go by the plain language of the statute? Why do we go delving into legislative history or all of that when it says parking? They could have said an amount, no more than. They could have, you know, there are moving violations, I take it, that would, what's the maximum moving violation fine? Well, for speeding through a red light, it's $124. No city and no party here says that any city would ever levy more than $124 on a person who was detected running a red light by camera. So the limit of $250 is not a limit. It renders that whole sentence superfluous. But $124 is less than 250. Right. And if, Judge Talman, if you're looking at the statute to determine what the cities can get away with, whether they're under some amount that would be permissible by, you know, an abstract reading of this sentence, then you're right. But we're not. We're looking to see what. But you want us to rule as a matter of law that they can charge no more than a nominal amount, which would be somewhere between, I guess, $20 and $50, although it never ceases to amaze me how much a parking ticket costs. That's right. That's right. And it's a floating number. And I think that is probably. It keeps floating up, in my experience. That's right. That's right. Which is why I think the legislature didn't put a number, you know. But we're not actually asking for what you say exactly. Let me ask you a related question. I mean, you're here on a class action. Why didn't the defendants raise these defenses in municipal court or state district court when they were originally issued the citation? You mean our clients, the plaintiffs here? Yeah. Well, probably, I mean, A, you know, there's a lot of levels to that. I think most people don't ever show up in court because they get this notice, they don't remember running a red light, and they pay it. Second, when they do show up in court, they probably have no idea that, you know, they didn't read the statute, they didn't consider whether the city had authority that it ceded. And third, I don't think the court has jurisdiction to decide most of the claims we're bringing here. But the issue, the specific issue that we're talking about is the amount of the fine, which is the key to challenging the citation in the municipal court, is it not? I mean, the incentive is the same. You're trying to avoid having to pay $124 for a red light ticket. Yeah. No, I have to disagree. I think that the incentive of any of our individual clients, the plaintiffs in this case, is nominal, and they would not be here were it not for a class action. And I think, in fact, we cite a case in the res judicata argument saying that when the only incentive to fight something in one forum is a nominal fine, it can't be res judicata. So I've talked about the amount and how the intent of the legislature could not have been to set the amount at something like $250 taken from a statewide statute when no one thinks that the cities would ever even fine that much. It renders this not a limit at all, to read it the way the district court did and the way the defendants urged. Now, if there were any doubt, the legislative history does dispel it, I think. We have, most prominently, a statement from the sponsor of the bill on the Senate floor describing this exact amendment, saying this amendment restricts cities to their parking fines, which is about $20. Well, but we've got Washington case law that says, well, it may be influential to consider the floor statements of a bill sponsor. If there's no ambiguity in the statute, we don't get to the statements that Senator Haugen made on the floor. But, Your Honor, I think you have to find that if, I mean, again, the rule of law that we're seeking at this juncture, this is on the pleadings, is their fine, which is the same amount as an officer-issued ticket for that same thing, clearly exceeds what the legislature intended by putting any limit. But isn't the bigger issue here, and the legislature took care of that, whether or not these camera-generated citations go against your driving record, that's the break the legislature gave all the citizens of Washington. I think that was in the bill from the beginning. It was the funding that really brought to a head what Senator Haugen eventually said in justifying this amendment. Because the money that the cities keep from the normal red-light ticket that the officer issues is much less than $124. It's less than half. And it came to pass in the tussle over this legislation that it was going to be too much trouble to do that with these so-called parking-like citations, these red-light citations from cameras. So they said, let's let the cities keep all the money. But that was a computer problem, right, with the way that the statewide computer tracks citation fines? But then the amendment was introduced saying, yeah, but we're not going to let them charge whatever they want. We're going to limit what that revenue is because they're keeping it all. It would make no sense at that juncture in particular to say, well, let's limit the fines to $250, by the way. What would be the source of the limit then? What would you say, if the legislature meant that, then what would be the maximum fine? That's a great question. I thought you might ask. I would prefer, of course, to let that percolate through the case after we've gotten past the pleadings because I don't know the answer exactly. But I can tell you that our position is that it must be in the main of what the city issues for its own jurisdiction parking tickets. And as we've said in our briefs, most of the cities follow the state recommendation of $20. Some of them go up to $36, $40. So if Seattle, as Judge Tomlin indicated, has parking tickets that go up $200 or whatever it is, $150, then that would, in Seattle, then the limit would be that. If there were such a thing. There isn't such a thing as far as, you know, the parking tickets that are specific to a, you know, the standard parking ticket of parking in the wrong place or parking in a parking ticket. How do you define a parking ticket? Well, that is the problem. I mean, there are several. But I think all of the ones that exceed that. What's the maximum parking fine in Seattle? It's $36 is my understanding. Is for the standard parking ticket. I thought it was $47. You might be right. You might be more up on that than I am. I haven't got a whole lot. I'm not going to tell you what the source of my information is. What if you're parking in front of a hospital? I don't know which law applies there, but I know that there are a lot of fines that are set by state statute. So you're reading into the statute, A, it has to be parking, and it has to be the parking of the ordinance of the city itself. If it's a state parking fine, then the statute doesn't reach it. That's right. Okay. All right. Counsel, I have a question for you on these thorny issues of what the statute means. Has the Washington Supreme Court or one of the intermediate appellate courts in Washington, have they been asked to rule on the same issues? No, they haven't. This is the only case. Actually, this case is two combined cases that were filed in King County Superior Court but removed and consolidated before Judge Kuhnhauer in this district. So I'll reserve the rest of my time if there are no further questions. Thank you. Okay. Thank you. May it please the Court, I'm Greg Narver from the Seattle City Attorney's Office with Leonard Feldman, Counsel for ATS, and Fred Burnside, Counsel for Red Flex. Mr. Feldman will be addressing removal jurisdiction and, if time permits, res judicata. I'll try and leave him five minutes to address those issues, and I'll keep track. I'll be addressing the other issues on appeal, including the fine amounts, the payment terms in the contracts, and whether the infraction forms had to be approved by the AOC. The district court concluded that defendants had complied with Washington law on each of these points, applying the plain language of both the safety camera statute and the notice of infraction court rule, that ruling should be affirmed. This is a case about communities trying to make their streets safer and about what the legislature has told them they can and can't do. The city council in each of the cities in this case, based on the authority given them by the legislature to make their own laws, set camera fine amounts at levels they thought were appropriate for their community. Did they act legally? The only thing they had to look to was what the legislature had told them in the statute, that they couldn't charge more for camera infractions than they charged for other parking infractions within the jurisdiction. That's the only restriction in the statute, and it's been the same for the six years. Aside from the two state statutes that we talked about, abandoned vehicles and I forget what the second one is, aren't we really talking about fines that are less than $50 or $60, though, for most parking infractions? If you look in Seattle's list of parking fines, there are four that are $250. That's correct. Those are by and large set by state law, even though the cities in this case have either passed their own ordinances setting those amounts or adopting by reference state law. Is the Seattle Municipal Code the only one that incorporates the four state statutes? No. In the record, page 351 of the supplemental excerpts of record, there's a long list of all the different municipal code sections, and all of them have either set fines themselves above what they charge for camera fines or have adopted the state law that does that. There is nothing in the statute. Every one of these city councils is given this authority, and they're told, what you can charge shall not exceed your parking fines. And they open the book of parking fines in C-4-250 and read that. You can't exceed what's in there. But now we're being told they broke the law because apparently they were supposed to understand they had to insert words into the statute that aren't there, and that's the only way plaintiffs can win on this issue. Is the fine for these camera citations, are they the only fines in the middle? In other words, we have a low end of the range, which is, say, $20 to $50, a high end of the range of $250, but these are the only ones that are in the range of $107 to $124. That's correct. In Seattle, for example, if you run a red, it's $124. If you speed in a school zone, it's $189, same as if an officer had seen it because the risk of somebody getting hit is the same no matter who catches you. But what they see is we've got four that exceed $250, and that's the plain authority we were given by the legislature on that issue. You know, Mr. Johnson said that he looks at the statute and doesn't know what the limit is. Well, what position is the city council in? They read this, what appears to be very unambiguous, authorizing legislation from Olympia, but now they're being told that when the legislature said your parking tickets, what they really meant was typical, normal, average. The statute doesn't use any of those words. It doesn't use a specific dollar figure, even though the legislature has done that with other CAMRA legislation, and it doesn't say anything like, by the way, those expensive ones you have, those don't count. Every court so far that's looked at this language, which is the district court and the lower Washington courts we cite, has concluded it's unambiguous, and as those courts observed, if the legislature meant for the cities to charge less, it can change the statute. Because the statute is unambiguous, as Judge Tallman noted, legally that's the end of the inquiry. I do want to say, though, if this court— Just to make sure I understand, what you have said in response to the argument that they say rule out any state fine, you're saying, well, Seattle has actually either—you said by and large. The ones where they would be state-imposed, I think they're what, fire lanes, disabled parking, those kinds of things? Disabled parking, correct. Okay, so let's take that as an example. Has Seattle—that's set by the state? Yes, but Seattle has set its own ordinance. Okay, and it adopts that? No, it simply has passed its own ordinance using the same fine. And the same fine. Okay, so now Seattle has a disabled parking fine of $250, and so if that's true, then as I understand counsel's argument, they would have to concede that within Seattle, because as I understand their limitation is that it has to be within the city jurisdiction, imposed by the city. So in your case, $250. Now, when the city council looked at the red light violation, would it not take into account what it would charge for an officer-observed red light violation? Or just look to the maximum and says, hey, we've got a $250, let's go right to the maximum. Is that what the import was of your argument? Nobody is charged $250. What most of the cities have done is set the fee at the same amount as if an officer observed it, on the reasoning that it's the same violation no matter what color. So what's a moving red light in Seattle? $124. $124, and the camera is $124. I'm sorry, it's $124 for both, either officer-observed or a camera. And in school zone speeding, it's $189, no matter who caught you. And in both instances, the city council is able to open its book and see $250 fines that exceed that. Got it. Plaintiffs place a lot of reliance on what Senator Haugen said on the floor, and that's one legislator out of 147. And what's more, as this court has observed, even if one legislator stands up and says, this bill will limit them to something like $20 or $40, that's emphatically not the statute they passed. And here's the concern here. These city councils have been given what they view as unambiguous enabling legislation, and every city read this statute the same way. But they're effectively being told, you still have to go to the archives, you still have to go look through what was said on the floor, just in case some legislator stood up and said something that contradicts what appears to be very plain language. That's why courts don't engage in judicial construction of unambiguous statutes. We also have the fact that in the current legislative term and last legislative term, there have been specific proposals to place very strict limits on what these fines can be. They haven't advanced out of committee. But, I mean, what do we make of that? All sorts of things happen in the legislature that never see the light of day. True. But this isn't happening in a vacuum. This is a hot political issue in the state, if you just do a nexus search for this. And there were full committee hearings. We do record searches, and I didn't see that in the record. Okay. We have cited that there have been full committee hearings, both this year and last, in which I guess what I would simply say is the legislature is fully aware of how much the cities are charging. And, yes, there are a lot of reasons bills may or may not advance, but it has stayed the same for the six years it's been in effect. This court has noted many times that it isn't the job of the courts to rewrite a statute, and that is exactly what plaintiffs are asking you to do here. I want to talk very briefly about the contract terms, and that's another issue that's controlled by the plain language of the statute. Compensation paid to camera companies has to be based upon the value of the equipment and services provided, and these contracts do exactly that. Statute doesn't set a dollar limit on what the value has to be that's left to the contracting parties, but every contract in this case sets out an agreed-upon amount for the value of equipment and services, and that's what the vendors get paid. The only thing that bothered me about that is there are two aspects. One is the $5 for every citation over 800 by a camera per month, and the other was the fact that in some cases the payments are forgiven if the camera doesn't generate enough revenue during the particular period. Well, I'll address the former first. That's the so-called cost neutrality, and that's essentially about giving a city a break on when it pays its fee if that camera isn't generating enough revenue to meet the flat fee for that month. You can pay it later. But that comes the closest to giving the city an incentive to either tell its reviewing officers to issue more citations if the evidence is close, or maybe we reset the timing cycle on the light so that it's shorter and it turns from yellow to red faster. Your Honor, I'd respectfully submit that it does exactly the opposite. I think cost neutrality actually guards against that incentive. If a city had to meet its flat fee every month no matter what, that's when you have an incentive to maybe we've got to issue more tickets and close calls or you find the money by raiding some other department's budget, which creates a whole other legal headache. I think that because it's focused just on the timing, it actually avoids that incentive. Very quickly on the other issue, one of the companies does charge some extra service charges. It's tied to the number of infractions for services, not revenue, which is what's prohibited. I want to leave Mr. Feldman enough time, so I'll just simply say that as we note in our brief, we think the issue of AOC approval is governed by the absolute plain language of that court rule. One last point I'll make is that even if this court were to find some merit in plaintiff's arguments, there are some cities that those arguments fail against. I'm not going to list those here, but I do remind the court that we've noted those distinctions in our brief. Thank you. Unless there are further questions, I'll yield to Mr. Feldman. Thank you. Thank you. Good morning, Your Honors. As Mr. Narver noted, I've been asked to address the CAFA jurisdiction as well as Resident of Dakota. Just identify yourself for the record. He did, but. Absolutely, Your Honor. My name is Leonard Feldman. I'm counsel for ATS. Starting with the removal jurisdiction under CAFA, as we explained in our briefs, there are a number of evidentiary issues that apply here. First, plaintiffs failed to oppose American Traffic Solutions notice of removal in the district court, and second, plaintiffs failed to comprehensively argue in their opening brief that the local controversy exception to CAFA jurisdiction was satisfied. Was this an issue argued in the district court? No, that's the point that I'm getting at. You said in their opening brief. Well, there's two evidentiary issues here, and they're both, I think, sufficient grounds for this court to dispose of this argument. One is that under Ninth Circuit case law, the plaintiffs here had a burden to show that the local controversy exception to CAFA was satisfied. Right. They didn't satisfy or even attempt to satisfy that burden in the district court. Right. Okay. I got that. Second, and separate from that, plaintiffs did not comprehensively argue this issue in their opening brief before this court. That's why I asked. That's what I heard you say, and I was missing the first one. Okay, fine. Got it. And I think either one of those is a sufficient basis. I guess I have a more fundamental question. Did they raise the challenge within 30 days of the removal in the district court? No, they didn't. Well, do we even need to address either of the two evidentiary issues, or can't we simply conclude that by failing to challenge removal it's forfeited? I think we're saying the same thing, Your Honor. Surprise. Sometimes we agree. Right. Questions are not necessarily hostile. Right. They also don't necessarily reflect how we think either. I understand. Mr. Feldman, why is it that we should not certify these state law issues to the Washington State Supreme Court? Well, I think the answer to that, Your Honor, is that the Washington State Supreme Court certification process requires, first and foremost, that this court conclude that the Washington statute is unclear. And that was the point that Mr. Narver made, that this statute is not unclear. It provides guidance to the city councils. It instructs them, directs them to look to these other parking infraction amounts. They did that, and they each saw the same limits, which were $250, not the limits that Mr. Johnson is pointing to. But if this court were to conclude that statutory language is unclear, then absolutely, Your Honor, this would be an appropriate case to certify to the Washington Supreme Court. We just don't think that it's necessary, given the clarity of the statutory language. Then how about the issue of the $5 per ticket, whether that's for services, for the goods, or whether that infringes the law? Is that also plain language? I think that is also a plain language issue. And so for that reason as well, it would not be an appropriate issue to certify to the Washington Supreme Court. Understanding, of course, that this court may feel differently, and if, as I said, the court thinks the statute is unclear, the issues require the Washington Supreme Court's holding, then absolutely, that's what the certification process exists for. But we would have to find that that $5 for high-volume camera locations is not being paid for other services provided by your client, right? Your Honor, I am not as familiar with that issue as Mr. Narver is, and if you have detailed questions about it, I could... That's right. We can read the statute. Sure. I think that's the question that we'd have to resolve. That's right. I do want to say one other thing about the local controversy exception to CAFA, and then if I have a few seconds to just talk about res judicata. You don't need to. Let's just get... Finish up because your time is running out. All I would say is that there are a number of federal district court decisions holding that when other similar class actions are filed in other districts that is sufficient to preclude application of the local controversy exception to CAFA. Thank you, Your Honors. Thank you. All right. Counsel, you have some time left. It just pops right back up. It does. So quickly on statutory interpretation, the clarity of this language. I think, first of all, it's mistaken to suggest that the language, the interpretation they're urging on the defense side is clear on its face. Okay, but so do you concede that in Seattle then the maximum is, as counsel said, the $250 since they've adopted that as their own? Absolutely. That's exactly what the district court hung its hat on as well, that there is a statewide fine of $250 for disabled parking. Seattle's adopted it. I assume all cities have, and that sets a limit that's plenty high. They can do whatever they want. That's the problem is that's not what the legislature intended, to find a way for them to do, charge basically whatever they want. And we would suggest that if you read this sentence in the law, that it's clear that to reach the conclusion they want, you do need to have a modifier in there before the amount. Which is what? Maximum. Maximum. And you still have the problem that they ended the clause with. Counsel, I'm just trying to understand your line. We do have statutory language that says parking in the jurisdiction. So I understood your argument to be that if we adopted your argument, the city councils would know that what it means is you have to look to your own parking regulations and fines. And if your fines are capped at $124 for parking, no matter what, then that's the maximum you can charge under this statute or this ordinance. I cannot defend the legislatures by saying that the cities should have all known, just by reading it the first time. I'm talking about if we rule that now, so that even on a going forward basis, what we have said, okay, we understand, looking at what you've asked us to, we understand that what this statute really means is, and we judicially insert the word maximum, then we have interpreted and put our judicial gloss on the statute. And I'm still trying to understand then if Seattle or any city around the state of Washington adopts the state, let's just take the $250, the state authorized parking fine as its own municipal maximum, then that would mean that the fines that could be imposed under this statute for a camera red light violation would be $250. Is that your argument? Well, I guess there's two parts to our reading of the defendant's position on this language, and one is this issue of their reading in maximum, but the second part is that the legislature chose to end it within the jurisdiction. And, Your Honor, I agree. You can give it the technical gloss, which says anything. I'm not saying gloss, counsel. I'm just trying to understand what you're saying. You are saying that it's within the jurisdiction. Okay. Is the jurisdiction for our hypothetical case Seattle? Well, in the city of Seattle, the vast majority of the types of parking ticket issued are the same amount, and I'm told it's actually $42. Whatever it is, counsel, just answer the question. Are you saying that it is the maximum parking fine that the jurisdiction authorizes for parking, or are you saying that it's not maximum that you're putting in there? What are you interlineating into the statute that will tell the counsels what the maximum is that they can impose? If I were their lawyers, I'd tell them that it should be based on the standard parking fine. The standard parking. Okay, fine. Thank you. All right. Thank you. Thank you. All right. The case argued is submitted. It's a very interesting case, and we do appreciate the arguments. Okay. The next case on calendar is Garvey, I believe, versus United States.
judges: Fisher, Gould, Tallman